**Electronically Filed
Intermediate Court of Appeals
29671
16-AUG-2011
10:46 AM**

NO. 29671

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAI'I

STATE OF HAWAI'I, Plaintiff-Appellee,
v.
ROBERT L. TETU, Defendant-Appellant,
and
JOSEPH PAUL MIOZZA, Defendant.

APPEAL FROM THE CIRCUIT COURT OF THE FIRST CIRCUIT
(CR. NO. 05-1-0486)

SUMMARY DISPOSITION ORDER
(By: Nakamura, C.J., and Foley and Fujise, JJ.)

Defendant-Appellant Robert L. Tetu (Tetu) appeals from the Judgment of Conviction and Sentence (Judgment) filed in the Circuit Court of the First Circuit (Circuit Court).[1] Plaintiff-Appellee State of Hawai'i (State) charged Tetu by complaint with (1) promoting a dangerous drug in the third degree (Count 1); (2) possession with intent to use drug paraphernalia; (Count 2); burglary in the second degree (Count 3); and (4) theft in the second degree (Count 4). After a jury trial, Tetu was found guilty of Counts 1 and 4 and acquitted of Counts 2 and 3.

I.

When encountered by the police, Tetu, Joseph Paul Miozza (Miozza), and John Lean (Lean) were in the proximity of drugs, drug paraphernalia, and stolen property. Miozza and Lean were seated in a car and Tetu was by the car on the sidewalk.

_____

[1] The Honorable Virginia Lea Crandall presided.

Tetu was charged in Counts 1 and 2 of the complaint with drug and drug paraphernalia offenses based on an "ice" pipe with methamphetamine residue, which was found in a pouch on top of a duffle bag on the sidewalk next to the car. Miozza was charged in Count 5 of the complaint with theft in the second degree regarding the same property that provided the basis for Tetu's theft charge in Count 4. Lean was not charged. The police recovered heroin, crystal methamphetamine, and marijuana in a black case on the center console of the car and an ice pipe on the ground in the area where Miozza had been placed after his arrest. No charges were filed based on the recovery of these items. Miozza made statements to the police after his arrest, pleaded no contest to Count 5, and testified for the State at trial.

II.

On appeal, Tetu argues that: (1) the Circuit Court erred in denying his motion to suppress incriminating statements he made to the police; (2) the Circuit Court erred in improperly limiting his questioning of Miozza and other witnesses about Miozza's drug use and in excluding evidence about the recovery the ice pipe on the ground near Miozza and the drugs found in the car; (3) the Circuit Court erred in excluding evidence of the alleged prior bad acts of the arresting officer; (4) the Circuit Court erred in denying his request to grant immunity to Lean or to permit defense counsel to withdraw so that defense counsel could testify about a statement made by Lean; and (5) the guilty verdicts on Counts 1 and 4 should be overturned because they are inconsistent with the acquittals on Counts 2 and 3 and are not supported by sufficient evidence.

We conclude that Tetu's arguments numbered (1), (3), (4), and (5) lack merit. However, we agree with Tetu's argument number (2). Accordingly, we vacate Tetu's convictions on Counts 1 and 4, and we remand the case for a new trial.

III.

Prior to trial, Tetu filed a motion in limine requesting permission to introduce evidence of Miozza's drug use and of bias on Miozza's part with respect to the resolution of Miozza's criminal cases.[2] As an exhibit to this motion, Tetu attached police reports showing that in addition to the ice pipe that formed the basis for Counts 1 and 2 against Tetu, the police recovered: (1) a black nylon zippered case which contained heroin, crystal methamphetamine, and marijuana on the center console of the car in which Miozza and Lean had been seated; and (2) an ice pipe with methamphetamine residue on the ground near where Miozza had been sitting after his arrest. The exhibit to the motion included the following statement by one of the investigating officers regarding Miozza's behavior before Miozza was searched incident to his arrest:

> While MIOZZA was sitting on the ground I observed him fidgeting with something under his shirt in his pants, he then threw an item towards the chain link fence and began to kick at a pile of leaves that were on the ground near his feet. MIOZZA then reached into a rear pants pocket and began to pull out a book of matches that he threw on the ground. At this time I told him to stop reaching into his pants and sit still. MIOZZA then said he was just pulling stuff from his pockets. I then walked to the area of the fence were [sic] he was kicking the leaves and discovered a clear glass pipe with residue resembling that of crystal Methamphetamine partially hidden in the leaves.

One of the police reports included in the exhibit also contained the observation that "MIOZZA appeared to [be] under the influence of narcotics, he was giggling and laughing during the arrest process, and at times when seated by himself would just start laughing." Miozza was arrested for the drugs found in the car and the ice pipe found on the ground, but no charges based on these items were filed.[3]

---

[2] In addition to Count 5 in this case, Miozza also pleaded no contest to theft charges in two other cases.

[3] Lean was also arrested for, but not charged with, the drugs found in the car.

At trial, the Circuit Court permitted Tetu to ask Miozza whether he had used drugs on the day of and the day before Miozza and Tetu were arrested in this case. Miozza denied using drugs on those days and testified that at that point, he had not used drugs for "a period of almost two weeks" and had just completed a detoxification program at the Salvation Army. Miozza had made similar statements regarding his drug use to the police. The Circuit Court also permitted Tetu to ask Miozza about Miozza's laughing during his arrest. The Circuit Court, however, precluded Tetu from asking Miozza or other witnesses about the ice pipe found on the ground next to Miozza or the drugs found in the car.

Tetu argues that the Circuit Court erred in precluding him from asking Miozza and other witnesses about the ice pipe found on the ground near Miozza and the drugs found in the car. Tetu argues that such evidence was relevant to impeach Miozza's credibility and expose Miozza as a possible perpetrator of the drug offenses with which Tetu was charged. We agree that the Circuit Court erred in precluding Tetu from eliciting the drug-related evidence Tetu sought to adduce.

Miozza was an important witness for the State regarding the burglary and theft charges against Tetu. The jury's acquittal of Tetu on the burglary charge suggests that the jury may have had some question about Miozza's credibility. The evidence of the ice pipe and the drugs found in close proximity to Miozza was relevant to impeaching his credibility. It would have served to cast doubt on Miozza's testimony at trial and his statements to the police that he did not use drugs on the date of his arrest and for a period of almost two week prior to his arrest.

The excluded evidence was also relevant to Tetu's defense to the drug and drug paraphernalia charges. These charges were based on an ice pipe with methamphetamine residue that was found in a pouch on top of a duffle bag. Tetu testified that the duffel bag belonged to Miozza and that Tetu had no

4

knowledge of the ice pipe. Evidence that drugs and another ice pipe (on the ground) were found in close proximity to Miozza would have served to support Tetu's defense that he had no knowledge of the ice pipe found in a pouch on the duffel bag.

We conclude that the Circuit Court erred in precluding Tetu from questioning Miozza and other witnesses about the drugs and the ice pipe (on the ground) found in close proximity to Miozza and that such error was not harmless beyond a reasonable doubt. We therefore vacate Tetu's convictions on Counts 1 and 4.

IV.

As noted, we conclude that the other arguments raised by Tetu lack merit, and we resolve these arguments as follows:

1. The Circuit Court did not err in denying Tetu's motion to suppress incriminating statements. Tetu's initial statement that the bags belonged to him was made at a time when he was not in custody and thus no Miranda warnings were required. See State v. Melemai, 64 Haw. 479, 481-82, 643 P.2d 541, 544 (1982); State v. Hoffman, 73 Haw. 41, 43-44, 54, 828 P.2d 805, 808, 813 (1992). Because Tetu's initial statement was lawfully obtained, Tetu's second statement that the tools belonged to him was not suppressible as the fruit of the poisonous tree. In addition, Tetu's second statement was not the product of police interrogation. See State v. Ikaika, 67 Haw. 563, 566-67, 698 P.2d 281, 283-85 (1985).

2. The Circuit Court did not err in excluding evidence of the alleged prior bad acts of the arresting officer. Tetu did not demonstrate that the proffered evidence was relevant, and the Circuit Court did not abuse its discretion in excluding the evidence under Hawaii Rules of Evidence (HRE) Rule 403 (1993).

3. The Circuit Court did not err in denying Tetu's request to grant immunity to Lean or to permit defense counsel to withdraw so that defense counsel could testify about a statement made by Lean. Under Hawaii Revised Statutes (HRS) § 621C-2 (1993), it is the State's prerogative to apply for witness

5

immunity. HRS § 621C-2; see State v. Feldhacker, 76 Hawai'i 354, 357-58, 878 P.2d 169, 172-73 (1994); State v. Radcliffe, 9 Haw. App. 628, 636, 859 P.2d 925, 930 (1993). The Circuit Court did not err in refusing to grant Lean immunity based a request made by Tetu.

The Circuit Court did not abuse its discretion in concluding that Lean's purported statement to defense counsel was not admissible pursuant to HRE Rule 804(b)(3) (1993). Tetu did not demonstrate that "corroborating circumstances clearly indicate the trustworthiness of the statement." HRE Rule 804(b)(3); see State v. Bates, 70 Haw. 343, 349, 771 P.2d 509, 512-13 (1989); State v. Christian, 88 Hawai'i 407, 418, 967 P.2d 239, 250 (1998).[4] Because Lean's purported statement to defense counsel was not admissible pursuant to HRE Rule 804(b)(3), the Circuit Court did not err in refusing to permit defense counsel to withdraw to testify about the statement made by Lean.[5]

4. The guilty verdicts were not inconsistent and there was sufficient evidence to support Tetu's convictions. Viewed in the light most favorable to the State, there was substantial evidence to support Tetu's convictions. See State v. Richie, 88 Hawai'i 19, 33, 960 P.2d 1227, 1241 (1998). Moreover, contrary to Tetu's claims, the jury's guilty verdicts were not inconsistent with its acquittals. Counts 1 and 2 required proof of different elements. The same is true of Counts 3 and 4. Based on the evidence presented and the jury's prerogative to

---

[4] We do not agree with the Circuit Court's alternate conclusion that Lean's purported statement was inadmissible under HRE Rule 804(b)(3) because it did not exculpate Tetu. HRE Rule 804(b)(3) imposes an additional corroboration requirement for a hearsay statement "tending to expose the declarant to criminal liability and offered to exculpate the accused." HRE Rule 804(b)(3) does not impose a separate requirement that the proffered statement itself be exculpatory to qualify for admission under the rule. Moreover, Lean's purported statement clearly was exculpatory with respect to Tetu.

[5] We also note that defense counsel indicated some hesitation about his ability to recall precisely what Lean had said.

make credibility determinations and weigh the evidence, the jury could rationally have found Tetu guilty of Counts 1 and 4 and not guilty of Counts 2 and 3.

V.

We vacate the Judgment filed by the Circuit Court on February 23, 2009, and we remand the case for a new trial.

DATED: Honolulu, Hawai'i, August 16, 2011.

On the briefs:

Stuart N. Fujioka
for Defendant-Appellant

Donn Fudo
Deputy Prosecuting Attorney
City and County of Honolulu
for Plaintiff-Appellee

*Craig H. Nakamura*
Chief Judge

*Daniel R. Foley*
Associate Judge

Associate Judge